UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHANNON TENNEY,

    Plaintiff,                              Case No. 2:15-cv-12624

v.                                        HONORABLE STEPHEN J. MURPHY, III

FCA US, LLC,

    Defendant.
_____/

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT (document no. 17)**

The lawsuit involves an allegation of unlawful age discrimination, and defendant FCA US, LLC ("FCA") brought the instant motion for summary judgment. The Court, having reviewed the parties' briefs and held a hearing, will grant the motion and dismiss the case.

**BACKGROUND**

Shannon Tenney is a 55 year-old man who worked for Chrysler (now called FCA) from 1985 until his termination in 2014. Tenney held various positions in the IT department, eventually becoming the IT Site Manager at the assembly plant in Belvidere, Illinois. He alleges that when Fiat and Chrysler merged, the new management connived to oust older workers like Tenney and replace them with younger workers. Consequently, Tenney argues he was unlawfully terminated because of his age. FCA claims that Tenney's firing was due to a history of poor performance.

I. Tenney's Roles and Supervisors

During his tenure at Chrysler/FCA, Tenney had several supervisors, each of whom provided feedback on his performance. From 2003–2007, Tenney was Manager of the Regional Data Center and was supervised by Mark Shepard. Tenney Dep. 30–31, ECF No.

17-2; Resume, ECF No. 17-3; Performance Reviews, ECF Nos. 17-4, 17-5, 17-6. Tenney became IT Site Manager at the Belvidere plant in 2009 and was supervised by Michael Dolan until 2013. Tenney Dep. 54, ECF No. 17-2. In March 2013, Karen Wrobel became Tenney's supervisor. *Id.* at 149–50. Wrobel continued to supervise Tenney when he transitioned to Change, Problem and Incident Manager that same year. *Id.* at 164–66; Resume, ECF No. 17-3.

Each of Tenney's supervisors reported to someone further up. Wrobel reported to Paolo Vallotti, who was Head of Architecture, Security Operation, Telecommunication, and Infrastructure. Vallotti Dep. 7, ECF No. 17-9. Vallotti reported to Scott Sandschafer, who served as CIO of FCA in 2009, the year that Chrysler and Fiat merged. *Id.* at 8. Sergio Marchionne began serving as CEO at the same time; Vallotti did not meet him until 2015. *Id.* at 8–9; Resp. Br. 1–2, ECF No. 19. As a result of the personnel chain in place at the company, decisions to terminate employees in Tenney's department were made by Wrobel and Vallotti, discussed with a Human Resources committee and with legal personnel, and then later approved by Sandschafer. *See* Wrobel Dep. 54–57, ECF No. 17-8.

II. <u>FCA's Performance Evaluation Methods</u>

FCA, both before the merger and after, conducted periodic employee evaluations. In the evaluation forms, supervisors rated employees' performances in various categories and spaces were provided to write comments. *See, e.g.*, 2005 Performance Review, ECF No. 17-4; 2006 Performance Review, ECF No. 17-5; 2010 PLM, ECF No. 17-10. FCA implemented a new performance evaluation program in 2010 called, "Performance and Leadership Management," or "PLM," but the new evaluation forms continued to provide

2

supervisors with the opportunity to rate and describe an employee's performance in several areas. *See* Tenney Dep. 55–56, ECF No. 17-2; 2010 PLM, ECF No. 17-10.

The PLM program did, however, change the evaluation process. Under the program, an employee was rated and evaluated under several categories, but was also given an overall, numeric score of one to nine. *See* Mot. 4–5, ECF No. 17; Vallotti Dep. 46, ECF No. 17-9. A score of five was considered "medium," while a score of four or less was considered "low" and indicated that an employee needed to improve. Tenney Dep. 64, ECF No. 17-2. Employees in need of improvement could be placed on a Performance Improvement Plan ("PIP"), which contained an explanation for why the employee has been placed on the plan, established goals to be completed by the employee, and set a schedule for interim reviews of the employee's progress. PIP, ECF No. 17-15. The interim reviews allowed the supervisor to determine whether sufficient progress had been made to warrant ceasing the PIP or whether the PIP should have continued. *See id.* At the conclusion of a PIP, the supervisor summarized the employee's progress and made a recommendation. *See id.*; Final PIP Review, ECF No. 17-18.

III. Tenney's Performance History

Even prior to the establishment of the PLM program, Tenney's performance evaluations revealed problems. In 2005, his supervisor rated his performance "excellent" and indicated his capacity to "learn quickly and to grow professionally and personally" but also answered "No" to the questions "Does the employee demonstrate substantial capacity to take over significantly complex tasks and to add considerable value in future?" and "Could the employee meet the higher demands of leadership behavior requirements at the next level?" 2005 Performance Review 2, ECF No. 17-4. In the written comments regarding

leadership behavior, the supervisor wrote, "You must focus on your team. You sometime[s] have to slow down and [l]isten to what p[e]ople have to say." *Id.* at 1. The written notes in 2006 were almost verbatim repetitions from the year before: "This ha[s] been a year with MANY challenges, from STAFF issues to LOST UNITS. You must focus on your team and do not get drag[g]ed into issues outside of your area. Sometime[s w]e have to slow down and [l]isten to what people have to say. It's great to be on the same TEAM." 2006 Performance Review, ECF No. 17-5. Tenney's 2007 evaluation was also largely positive; he was again rated as exceeding his targets, effective in leadership, and forecasted as being immediately ready for growth in his position. ECF No. 17-6. But the written comments also indicated an unwillingness to support change and he was advised, "You can and should state your opinion, but only once." *Id.*

Tenney's evaluations under the PLM program were also mixed. In 2010, he was rated "high" in "energy to deliver," and "medium" in many other categories, but he was given an overall rating of "low" in the category "Overall Leading People." 2010 PLM, ECF No. 17-10. His supervisor wrote, "The categories that are rated as 'low' have a common theme — Shannon is overly protective and defensive of his staff." *Id.* Referring to Tenney's change in position to IT Site Manager at the Belvidere Plant, the supervisor added, "I think Shannon will ultimately be successful in this role, but it will take action on his part to be willing to adapt to the environment[.]" *Id.* His PLM Leadership score for 2010 was "medium." And it fell from there.

In 2011, Tenney's PLM Leadership score dropped to "low." 2011 PLM, ECF No. 17-11. The supervisor who completed the report, Michael Dolan, provided specific examples of when Tenney fell short of expectations. Those instances included shortcomings in

4

managing his team and improper use of company procedures and communication channels. *Id.* As a result of the low PLM score, Dolan placed Tenney on a 90-day PIP, with interim reviews every 30 days. PIP, ECF No. 17-15.

In each subsequent review, Dolan specifically explained the areas in which Tenney continued to fall short. *See* Reviews for PIP, ECF Nos. 17-16, 17-17. After the first interim review, Dolan noted that Tenney was neither achieving satisfactory results nor demonstrating acceptable behaviors. ECF No. 16. At the second interim review, Dolan indicated Tenney had improved in the foregoing areas but also listed many specific instances in which improvement was needed. ECF No. 17-17. In the third interim review, Dolan explained that Tenney was improving in each area, but still recommended that the PIP continue, noting that Tenney "needs to continue to focus on these items so that he continues to [i]mprove." ECF No. 17-18.

At the conclusion of the 90 days, Dolan recommended Tenney come off the PIP, but concluded that although "there has been [i]mprovement, Shannon still struggles in the role of ICT manager." *Id.* He added, "[Tenney's] supervisor needs to provide an excess amount of guidance even after direction and process have been explained," that "his skillsets are not a good match for the position he currently occupies," and recommended that Tenney "be transitioned to a supporting role within the ICT department at Belvidere, which would appear to be a better fit for his skills." *Id.* Consequently, in December of 2012, Dolan informed Tenney that he would be transferred to a new position. Tenney Dep. 143, ECF No. 17-2.

Soon after, Tenney received his annual PLM report and he again received a "low." 2012 PLM, ECF No. 17-12. The written comments were similar to those of previous

evaluations: poor communication, difficulties in working within a team, and failing to follow protocols. *Id.* Later that year, Tenney was transferred to a non-managerial role and replaced by Patricia Spoelhof,[1] who is seven years older than Tenney. Answers to Interrogs. 4–5, ECF No. 17-19; Tenney Dep. 9, 152, ECF No. 17-2.

The new position would prove to be Tenney's last role at FCA. In 2013, he received his third-consecutive "low" on the PLM review. 2013 PLM, ECF No. 17-13. Consequently, his new supervisor, Karen Wrobel, recommended that he be put on another PIP. Tenney Dep. 172–73, ECF No. 17-2. Wrobel later met with another of Tenney's superiors, Paolo Vallotti, and a member of Human Resources, Stephanie Cherry, to discuss the potential PIP and the possibility of moving Tenney back to Auburn Hills. Wrobel Dep. 54–56, ECF No. 17-8; Vallotti Dep. 33–35, ECF No. 17-9. After discussion, Wrobel and Vallotti determined that even with the move, Tenney was unlikely to improve and that termination was the best course of action. *Id.* Wrobel and Cherry informed Tenney of his termination on March 17, 2014. Tenney Dep. 208, ECF No. 17-2. He was replaced by William Shoener, who is six months older than Tenney. *Id.* at 9, 222–23; Ans. to Interrogs. 5, ECF No. 17-19.

## STANDARD OF REVIEW

Summary judgment is proper if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material for purposes of summary judgment if its resolution would establish or refute an

---

[1] Tenney's response brief claims he was replaced by Dave Hoffman, a man purportedly in his mid-forties, but the record is clear that Hoffman was intended to be, and was, an interim replacement. *See* Dolan Dep. 49, ECF No. 17-7. But since Tenney is challenging his ultimate termination and not this change in position, the distinction is inconsequential.

"essential element[] of a cause of action or defense asserted by the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984).

In considering a motion for summary judgment, the Court must view the facts and draw all inferences in the light most favorable to the non-moving party. *Stiles ex rel. D.S. v. Grainger Cnty., Tenn.*, 819 F.3d 834, 848 (6th Cir. 2016). At the summary judgment stage, the judge's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Jackson v. VHS Detroit Receiving Hosp., Inc.*, 814 F.3d 769, 775 (6th Cir. 2016) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). But a mere "scintilla" of evidence is insufficient to survive summary judgment; "there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

## LEGAL STANDARD

The Age Discrimination in Employment Act (ADEA) makes it unlawful for an employer to discharge or discriminate against an individual "with respect to his compensation, terms, conditions, or privileges of employment" because of his age. 29 U.S.C. § 623(a)(1). A plaintiff can prove discrimination under the ADEA either through direct or circumstantial evidence. *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003). Direct evidence is that which, "if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999). Circumstantial evidence is "proof that does not on its face establish discriminatory animus, but does allow a factfinder to draw a reasonable inference that discrimination occurred." *Wexler*, 317 F.3d at 570. Whether using direct or circumstantial evidence, the burden of persuasion remains

on the plaintiff to demonstrate that age was the "but-for" cause of his employer's adverse action. *Geiger v. Tower Auto.*, 579 F.3d 614, 620 (6th Cir. 2009) (quoting *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 129 n.4 (2009)).

Proof through circumstantial evidence requires the plaintiff to first make a showing of prima facie discrimination. *See Geiger*, 579 F.3d at 622. To prove prima facie discrimination under the ADEA, the plaintiff must show:

1) that he is at least 40 years old
2) that he was subject to an adverse employment decision,
3) that he was qualified for the position he held, and
4) that he was replaced by a "significantly younger person" or treated differently than similarly situated individuals.

*See House v. Rexam Beverage Can Co.*, 630 F. App'x 461, 462 (6th Cir. 2015)*; Grosjean v. First Energy Corp.*, 349 F.3d 332, 335 (6th Cir. 2003).

## DISCUSSION

Tenney has not made a prima facie showing. He satisfies the first three requirements: he is over 40 years old, he was subject to an adverse employment decision (he was fired), and he was apparently qualified for the positions he held.[2] But the fourth requirement is not met. Tenney was not replaced by a "significantly younger person" and there is no evidence that a similarly situated, younger employee was treated differently than him.

When Tenney was removed from his role as IT Site manager, Patricia Spoelhof replaced him. She is eight years older than Tenney. When Tenney was ultimately terminated, he was replaced by William Shoener, who is six months older.

---

[2] Tenney's performance reviews reflect high marks in certain areas (like troubleshooting). FCA makes no argument that Tenney was unqualified, other than the purported shortcomings in his communication and management skills that were noted as the reasons for his termination.

And Tenney ultimately cannot show that a similarly situated, younger employee was treated differently than him. FCA argues that because Tenney was the only employee to hold the position of Change, Problem and Incident Manager at the time of his termination, "no other FCA employee [] was capable of being similarly situated" to Tenney. Mot. 20, ECF No. 17.

The rule is not so narrow. As the Sixth Circuit has pointed out, "[I]f the non-protected employee to whom the plaintiff compares himself or herself must be identically situated to the plaintiff in every single aspect of their employment, a plaintiff whose job responsibilities are unique to his or her position will *never* successfully establish a prima facie case (absent direct evidence of discrimination)." *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 353 (6th Cir. 1998). Instead, a plaintiff need only demonstrate that he "is similarly-situated to the non-protected employee in all *relevant* respects." *Id.*

But to make the type of comparison set forth by the Sixth Circuit, a plaintiff must still point to *some* non-protected employee for comparison. And Tenney points to none. Because Tenney cannot show that a similarly situated, younger employee was treated differently than him, Tenney cannot make a prima facie showing under the four-part test.

Although the four-part prima facie test "should not be formalistically applied," the fact that Tenney "cannot establish a prima facie case under the framework is not itself a sufficient reason to dispense with the test in favor of a more forgiving standard." *See Green v. Fidelity Investments*, 374 F. App'x 573, 577 (6th Cir. 2010). In *Green*, the plaintiff also failed to satisfy the four-part test but argued that, in light of the evidence, he had nevertheless made a prima facie showing. The court disagreed, noting that the plaintiff's evidence consisted "primarily of perceived social slights and his own subjective view that

9

his performance made the decision otherwise irrational," and did not "suggest that his age was the 'but-for' cause of his termination." *Id.*

The same is true here. The sparse remarks of Sandschafer (and perhaps Marchionne) and the employment numbers that were briefly addressed in Tenney's supplement to his response are not specifically connected to Tenney and do not show that, but for his age, Tenney would not have been terminated.

Because Tenney has failed to make a prima facie showing of age discrimination, the Court will grant FCA's motion.

### ORDER

**WHEREFORE**, it is hereby **ORDERED** that FCA's Motion for Summary Judgment (document no. 17) is **GRANTED**.

**IT IS FURTHER ORDERED** that the case is **DISMISSED WITH PREJUDICE**.

**SO ORDERED**.

s/Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: October 31, 2016

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on October 31, 2016, by electronic and/or ordinary mail.

s/David P. Parker
Case Manager

10